UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

| | |
|---|---|
| MICHAEL F. GALA, JR., | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| -against- | 20 Civ. 5549 |
| THE CITY OF NEW YORK and DANIEL A. NIGRO in his individual and official capacity as the Commissioner of the New York City Fire Department, | |
| Defendants. | |

------------------------------------------------------------------ X

Plaintiff Michael F. Gala, Jr. ("Plaintiff"), by his undersigned counsel, for his Complaint, alleges against Defendants the City of New York (the "City") and New York City Fire Commissioner Daniel A. Nigro ("Commissioner Nigro," and together with the City, "Defendants") as follows:

## NATURE OF THE ACTION

1.      Plaintiff has dedicated his entire professional life to protecting the people of New York City, first as a police officer, and then, for the past 33 years, as a firefighter. He is a highly decorated and widely respected member of the New York City Fire Department ("FDNY") who has responded to countless life-threatening emergencies, including the terrorist attacks on September 11, 2001. He has led numerous successful rescue operations, received multiple awards for bravery, mentored generations of firefighters, and written and lectured extensively on firefighting. He has also witnessed firsthand the tragic loss of life—both to fellow firefighters and civilians—from fire and other catastrophic events. To say that he cares deeply about the safety of the men and women of the FDNY and the people of New York City is a gross understatement.

1

Indeed, it is his devotion to the job and his tireless work ethic that have allowed him to rise in the ranks of the FDNY to Deputy Assistant Chief of Operations.

2. In May 2020, Plaintiff was set to receive a promotion to Assistant Chief of Department. He was informed of this fact directly by Chief of Department John Sudnik, among others. However, upon hearing confirmation of this long-overdue promotion, Plaintiff was then directed to issue a retraction, by email, of statements he had made in letters to the editor of a newspaper over a decade ago. In those letters, he opposed efforts to relax the FDNY's hiring standards, which was motivated by a desire to protect the health and safety of FDNY members and the public. Because he continued to believe his prior position was correct, and because he believed in his constitutional right to say as much, Plaintiff declined to issue the retraction. When the promotion list was circulated a few days later, Plaintiff's name had been removed. Subsequently, Chief Sudnik advised him that his refusal to issue the retraction was the basis on which the promotion decision had been reversed by Fire Commissioner Daniel A. Nigro.

3. The denial of Plaintiff's promotion presents a textbook First Amendment violation. Even if one disagrees with Plaintiff's statements from years ago regarding the FDNY's hiring standards—a subject of intense public debate and litigation—there can be no disagreement about their status as protected speech. It is a foundational principle of our democracy that a government employer may not take adverse action (including denial of a promotion) against an "employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). Although Defendants have a legitimate interest in maintaining an effective and cohesive firefighting force, Plaintiff's refusal to recant decade-old statements opposing controversial efforts to modify the FDNY's hiring process—efforts which the City and the FDNY *themselves* opposed at the time—cannot possibly be considered so disruptive

to fire department operations today as to justify the denial of his right to speak on matters of such public importance. As the Second Circuit explained in a similar case, Defendants' "interest in preserving harmony [in the fire department] does not outweigh [Plaintiff's] exercise of free speech." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

4. Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate his First Amendment rights and to ensure that other civil servants, regardless of their views, are allowed to exercise their free speech rights without fear of reprisal.

5. If the present constitutional violation is permitted to stand, no city worker can feel secure in the ability to freely exercise his or her First Amendment rights.

## THE PARTIES

6. Plaintiff Michael F. Gala, Jr. is a resident of Kings County, New York. He is currently serving as a Deputy Assistant Chief of Operations in the FDNY.

7. Defendant the City of New York is a municipality organized under the laws of the State of New York. It maintains a fire department, the FDNY, and employs firefighters who, among other things, are responsible for protecting individuals and property in the City of New York.

8. Defendant Daniel A. Nigro is the 33rd Commissioner of the FDNY. He has held that title since June 9, 2014. He is an employee of the City and is the civilian administrator and head of the FDNY. As such, Commissioner Nigro is responsible for the FDNY's administration and operation, including, but not limited to, hiring, firing, promotion, and discipline of employees.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 over Plaintiff's claim under 42 U.S.C. § 1983.

10. Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this District and because a substantial part of the events and omissions giving rise to the claim set forth herein occurred in this District.

## FACTUAL ALLEGATIONS

A.     **Plaintiff's Background**

11. Plaintiff is a lifelong civil servant. He joined the FDNY as a firefighter in 1987. He was promoted to Lieutenant in 1994, Captain in 2001, Battalion Chief in 2007, Deputy Chief in 2014, and Deputy Assistant Chief in 2016. As Defendants themselves have repeatedly acknowledged, Plaintiff has performed at all ranks—including as Deputy Assistant Chief for the past four years—with the utmost integrity, diligence, selflessness, and skill.

12. Plaintiff has enjoyed a distinguished career in the fire department. He is a highly decorated and widely respected leader whose accomplishments and reputation are beyond reproach. He has received several citations for bravery as well as numerous other honors, including the FDNY Columbia Association's Man of the Year in 2018. He is a nationally recognized authority on firefighting operations and a prolific writer and lecturer on all things fire services-related. He has taught and authored several publications on firefighting tactics and strategies.

13. Plaintiff's vast experience in the field and decades-long study of firefighting scholarship have given him unique insight into what makes for a successful firefighter and fire department. And his fearless devotion to the health and safety of FDNY members and the public have compelled him to speak out when necessary to ensure their protection.

14. From approximately 2010 through 2012—in response to a finding by the United States District Court for the Eastern District of New York that entrance exams previously

4

administered by the FDNY had an unlawful discriminatory impact on minority applicants—Plaintiff helped lead the overhaul of the FDNY's hiring process in order to make it fairer and more job-related. Plaintiff poured himself into this effort, working tirelessly to help create and administer a new exam that successfully screened for the most qualified firefighter candidates regardless of race, ethnicity, nationality, sex, or other non-job-related characteristic. His extraordinary work was ultimately successful. It produced a revamped entrance exam that he is immensely proud of, as it addressed disparate impact concerns without sacrificing hiring standards. Plaintiff's invaluable contribution to the overhaul process was widely acknowledged, including by Mary Jo White, the court-appointed special master overseeing the process. Indeed, in numerous reports filed with the court, Mary Jo White repeatedly praised Plaintiff. For example, in her Special Master's Report No. 7 she wrote:

> [T]he Special Master would like to commend Chief Michael Gala of the FDNY, the United Firefighters Association ("UFA"), and the United Firefighters Officers Association ("UFOA") for their efforts in connection with the criterion study. At the Special Master's request, the UFA drafted and distributed a letter to its membership, encouraging their cooperation in the study. This outreach was very important to the success of the study, as were Chief Gala's efforts in distributing the letter, following-up with incumbents to ensure their attendance, and overall assistance in scheduling and coordinating the test administration sessions. . . .
>
> The Special Master thanks the parties, experts, *Amici*, and Chief Gala of the FDNY for their past and continued assistance and cooperation in this joint effort.

*U.S. v. City of New York*, 07-cv-02067-NGG-RLM (E.D.N.Y.), ECF No. 691 at 5, 7.

**B.    Plaintiff's Published Letters**

15.    In the 1990s and early 2000s, Plaintiff wrote a number of letters to the editor of the civil service-themed newspaper *The Chief-Leader* in response to articles and letters opining on various matters of public concern, including the FDNY's entrance exam. In these published letters,

Plaintiff opposed efforts to relax the FDNY's hiring standards. Plaintiff's letters, written with the characteristic bluntness of a first responder, emphasized the importance of holding all FDNY applicants to the same rigorous and objective testing requirements.

16. In his letters, Plaintiff addressed a matter of great public importance: how to ensure both excellence and inclusiveness in the FDNY, the largest, busiest, and highest-profile fire department in the country. Although Plaintiff was wading into a hot-button debate that triggered strong emotions—and, from 2007 to 2014, litigation against the City—that debate, and Plaintiff's contributions to it, lies at the core of the First Amendment. Indeed, given the public policy significance of Plaintiff's speech, the public forum in which that speech occurred, and the value of Plaintiff's expert opinions, the First Amendment interests involved here are at their peak.

17. Defendants have no compelling reason to punish or suppress the speech at issue in this case, which is now over a decade old. Plaintiff's published letters did not violate any laws or FDNY rules. Nor did they cause any harm to the FDNY's operational effectiveness. Defendants have never alleged, much less demonstrated, otherwise. Nor could they plausibly do so.

18. Plaintiff's letters echoed the official positions of the City and the FDNY at the time. In public statements and in court filings made during the course of litigation regarding the FDNY's hiring process, the City and FDNY vigorously opposed efforts to modify the FDNY's entrance exam or relax its hiring standards.

19. Moreover, in the many years since Plaintiff's letters were published, Defendants have repeatedly promoted Plaintiff despite being fully aware of their content. Thus, Defendants are estopped from claiming that the letters prevent them from promoting Plaintiff.

20. Importantly, Plaintiff's letters predate the 2010 court-ordered overhaul of the FDNY's entrance exam. Because, as noted above, Plaintiff played an instrumental and

6

enthusiastic role in that overhaul process—indeed, his exceptional work earned the repeated praise of Mary Jo White, the special master overseeing the process—there can be no claim that his past opposition to lowering hiring standards applies to the FDNY's revamped entrance exam or the firefighters who were hired based on it. Plaintiff considers the redesign of the FDNY's entrance exam to be one of the greatest achievements of his storied career—it, along with the minority recruitment initiatives in which he proudly participated, has helped ensure both excellence and diversity in the FDNY.

**C.    Retaliation for Plaintiff's Published Letters**

21.    On the morning of Monday, May 18, 2020, Plaintiff met with Chief of Department John Sudnik and Chief of Fire Operations Thomas Richardson.

22.    At that meeting, Chief Sudnik informed Plaintiff that Plaintiff was going to be promoted to Assistant Chief of Department on May 23, a fact confirmed by another high-ranking member of the department, among others. Chief Sudnik explained, however, that Commissioner Nigro wanted Plaintiff to send an email renouncing the opinions he had expressed in his letters to *The Chief-Leader* many years ago. More, Chief Sudnik said that the retraction, which Commissioner Nigro wanted by email immediately, should say "**I am not the same man I was**" when Plaintiff wrote the letters.

23.    Although Plaintiff was willing to clarify in writing that he deeply valued diversity and never intended his letters to offend anyone, he declined to retract his prior statements.

24.    Plaintiff had three reasons for not issuing a retraction. First, his letters were motivated by a sincere desire to protect the health and safety of firefighters and civilians. Second, caving to pressure to recant his published statements would set a harmful precedent: it would embolden Defendants to trample the free speech rights of other civil servants and would send a

message (including to the many firefighters who looked to Plaintiff for leadership) that Defendants could bully anyone into taking whatever position Defendants wanted on matters of public concern. Third, as a man of deep principle, Plaintiff thought it was amoral to capitulate on sincerely held views simply to obtain a promotion.

25. When the list of FDNY promotions was announced a few days after the May 18 meeting, Plaintiff's name was missing.

26. Plaintiff immediately asked Chief Sudnik for a written explanation regarding why he had not been promoted. Chief Sudnik refused to provide an explanation in writing. Instead, he met with Plaintiff in person and stated that Commissioner Nigro reversed the promotion decision because Plaintiff declined to renounce his published letters.

27. Defendants have not provided any alternative rationale for their decision to withdraw Plaintiff's planned promotion.

28. Since May 2020, Defendants have continued to deny Plaintiff the promotion to Assistant Chief of Department.

29. Plaintiff has reminded Defendants that their refusal to promote him based on his exercise of free speech is unlawful, and he has demanded that he be given the promotion he was impermissibly denied. In response, Defendants have refused to acknowledge or remedy their flagrantly unconstitutional, and continuing, misconduct.

## CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983)

30. Plaintiff repeats and realleges the allegations in paragraphs 1-29 as if fully set forth herein.

31.     Plaintiff has a constitutionally protected right to speak as a citizen on matters of public concern without retaliation by Defendants.

32.     The letters Plaintiff authored years ago in *The Chief-Leader*, and his decision not to recant them in May 2020, represent valid exercises of this First Amendment right.

33.     Defendants, under color of state law and in violation of 42 U.S.C. § 1983, willfully and wantonly deprived Plaintiff of his First Amendment right to free speech by taking an adverse employment action—denial of his promotion to Assistant Chief of Department—based on the letters he authored in *The Chief-Leader*.

34.     Defendants do not, and cannot, identify any permissible justification for their retaliatory and infringing conduct.

35.     Defendants' conduct has directly and proximately caused significant financial, professional, reputational, and emotional harm to Plaintiff.  It has also caused immeasurable harm to FDNY members and the general public by chilling people's willingness to speak on matters of public concern due to fear of reprisal by those in power, even years later.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment and relief as follows:

A.      Declaring that Defendants' acts complained of herein violated Plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

B.      Ordering Defendants to promote Plaintiff to Assistant Chief of Department, effective as of the date when his promotion was first unlawfully denied;

C.      Awarding Plaintiff a money judgment for damages, including, but not limited to, lost wages, overtime pay, future pay, lost benefits, and other economic damages; and damages for

the shame, humiliation, embarrassment, physical and emotional pain, mental anguish, and humiliation suffered by Plaintiff, in an amount to be determined at trial;

      D.      Awarding Plaintiff punitive damages, as applicable, for Defendants' willful and wanton disregard of his rights;

      E.      Awarding Plaintiff his reasonable costs and attorney's fees incurred in connection with this action pursuant to 42 U.S.C. § 1988; and

      F.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all claims triable to a jury in this action.

Dated: New York, New York
       November 13, 2020

                                    WALDEN MACHT & HARAN LLP

                              By: *Jim Walden*
                                   Jim Walden
                                   Milton L. Williams
                                   Jacob Gardener
                                   Yuanzhou Wu
                                   One Battery Park Plaza
                                   New York, NY 10004
                                   (212) 335-2030
                                   *Attorneys for Plaintiff*