EXHIBIT B



DO MORE
FOR YOURSELF
THIS YEAR.

TOURO COLLEGE
NEW YORK SCHOOL OF
CAREER & APPLIED STUDIES

Start your application now →

https://thechiefleader.com/news/news_of_the_week/fire-commissioner-grilled-by-judge-about-hiring-bias/article_691e2380-c749-11e0-99f9-001a4bcf6878.html

FEATURED

Defends Process, Review Board

# Fire Commissioner Grilled By Judge About Hiring Bias

By FLORA FAIR
Aug 19, 2011





**NICHOLAS GARAUFIS:** Skeptical about current process.



**MICHAEL GALA:** Strong opinions in past about Vulcans.



**DONAY QUEENAN:** Denies she's seen bias.

Fire Commissioner Salvatore Cassano found himself on the hot seat last week, after Brooklyn Federal Judge Nicholas Garaufis ordered him to take the stand following startling testimony in the FDNY exam trial.

Dressed in a dark suit and burgundy tie, the Commissioner seemed neither furious nor flustered. And though this case, which has dragged on for years and cost the department 300 new hires, is a sore point for his agency, Mr. Cassano greeted the judge with a cordiality that he reciprocated. Most of the judge's heated exchanges were saved for city lawyers, who raised numerous objections during questioning.

## Objects to Special Master's Role



But those questions put Mr. Cassano on the defensive about everything from recruitment to the applicant review process. The Fire Commisssioner oversees 16,000 employees and a $1.6-billion budget, and repeatedly insisted that any efforts by Judge Garaufis to have his special master, former U.S. Attorney Mary Jo White, oversee the application process would undermine his authority as Commissioner. "I've been at the department 42 years," Mr. Cassano said. "I think I know what's best for the department."

When the FDNY had to rebuild after losing hundreds of firefighters and Emergency Medical Service workers on 9/11, Mr. Cassano testified, part of the strategy included an effort to diversify the force. He cited the record number of minority applicants for the 2007 exam—with nearly 2 1/2 times more black applicants and twice as many Hispanic

applicants as on the previous exam. At 24 days into the registration process for the January 2012 exam, statistics showed that there were 15.2 percent black applicants out of a total of 16,825 candidates. Mr. Cassano said he thought the department was doing a very good job of reaching out to minorities, with more than 6,000 events focused on diversity recruitment during his tenure. "I got personally involved in the [minority] recruitment campaign," he said.

He insisted there's no need for injunctive relief to improve the hiring of blacks and Hispanics at the FDNY, saying that the court should give his efforts a chance to work. "We've been very proactive," he said. "I think the results are showing it."

### Justice Department Saw Bias

The hearings are part of a Federal case against the Fire Department, filed by the U.S. Department of Justice and the Vulcan Society, a fraternity of black firefighters, alleging discriminatory hiring practices. The judge has already ruled that the last three FDNY exams, administered in 1999, 2002 and 2007, had a "disparate impact" on minority candidates, and has ordered a hiring freeze until the new exam, developed with input from all sides, is given in January 2012. This set of hearings was to decide a plaintiff request to have Ms. White  oversee the FDNY hiring process—a request that the commissioner repeatedly warned would undermine his authority.

There had been objections from the city to Judge Garaufis's order that the Commissioner testify, but he overruled them, saying Mr. Cassano was "ultimately responsible" for the hiring process. "The Commissioner should have the opportunity to tell the court the extent to which some of these choices may be workable in his view or not workable in his view," the Judge said, referring to options plaintiffs have put before the court for a special master, more-solid review guidelines and a written record of the FDNY Personnel Review Board process. Judge Garaufis said he wants to be "extremely careful" in crafting any changes to the department.

Prior to Mr. Cassano, Donay Queenan took the stand. Ms. Queenan, who has been with the department since 2004, is the Assistant Commissioner of Human Resources for the FDNY and handles hiring and employee issues. She also sits on the PRB, along with several department chiefs, the Executive Fire Officer to the Commissioner, and the First

Deputy Officer. She is the only woman on the board, which also includes six white men and one black man. When asked her race, Ms. Queenan responded she was mixed race—black and white.

### Ensuring Bias-Free Screening

She explained that Firefighters are assigned Peace Officer status, meaning they can issue a warrant or a summons, or enter a property without the owner's permission. Because of this, candidates, especially those with criminal records, must be carefully considered to ensure their integrity for the job. She said the PRB takes a vote on each candidate brought before it, and keeps a record of the tally.

As Assistant Commissioner, she altered the review process in several key ways, including removing applicant photos from files to help prevent bias, and creating a single-sheet history of the applicant that gives a more-complete sense of the person. She also testified that the department had attempted to make the files completely anonymous by removing the names, but that consistently redacting an applicant's name throughout a file proved to be virtually impossible, so this practice was abandoned. Nonetheless, Ms. Queenan said that if there was anything she could change about the process, it would be to remove the candidate names.

When asked if she thought there should be a special master to oversee hiring practices at the FDNY, Ms. Queenan said no, and denied seeing any discrimination in hiring at the department.

### Chief's Objectivity Questioned

In cross-examination by the plaintiffs, she was asked if she was familiar with letters written by Chief of Uniformed Fire Personnel Michael Gala, who also sits on the PRB, in this newspaper prior to his being appointed to that position. She said that she had not read them, nor was she familiar with his views on the case.

In a series of Letters to the Editor spanning several years while he was a Battalion Chief, Mr. Gala made clear his disdain for the Vulcans' arguments. In a July 13, 2007 letter, he called Vulcan President John Coombs's solutions to getting blacks to join the department

"shallow." In a Feb, 15, 2008 letter, his words were far stronger: "If you are a black firefighter in this department and you have an opinion, then speak up, brother. If you are a female firefighter, then you may speak up as well. However, if you are a white male firefighter, keep your bigoted, racist opinions to yourself," he wrote. "...I am tired of listening to black and female firefighters who have earned their positions in this department or who have risen through the ranks on their own merits and yet condemn the same system that facilitated that rise."

Though Ms. Queenan insisted that calls to PRB members don't influence the vote, this revelation has clearly troubled the judge since testimony the week before about how applicants accused of domestic abuse and serial drunk-driving, among other things, would get support from FDNY officers who knew them. The judge was concerned that there's no obligation by board members to inform the PRB when someone calls them on behalf of a candidate, and there isn't any official record that such calls took place.

## Too Much Gray Area?

And despite Mr. Cassano's assurances, the repeated mention of there being no set policy for how the PRB conducts its reviews or makes its decisions, and no obligation to report what kind of influence other members of the department try to have on the reviews, raised questions. Plaintiffs also emphasized the lack of an internal appeals process of the board's decisions, and that candidates had no way to find out why they were rejected by the department. Mr. Cassano said that any written summary of the meetings "may hamper open or frank discussion," and that any explanations for a rejection would likely sound "generic," though the judge didn't seem convinced.

The Commissioner contended that, though Special Master White has been helpful in the process, involving an outsider in the application process would "infringe upon his responsibility to oversee the agency." He disagreed with the idea that there were problems with unbridled discretion at the PRB, saying there's a lot of "open discussion" and that "everyone is treated fairly."

## Pressed on Paucity of Blacks

Case 1:20-cv-05549-BMC   Document 16-2   Filed 01/07/21   Page 7 of 9 PageID #: 58

In his cross-examination, plaintiff attorney Richard Levy asked if Mr. Cassano felt that Ms. White was impinging on his authority, to which Mr. Cassano replied that she hadn't so far. To gauge her effectiveness, he said, he would have to see the results of the exam. Mr. Levy asked if he thought the makeup of the FDNY, which was 3 percent black when the Vulcan complaint was initially filed with the DOJ in 2002, and is roughly the same today, has shown any kind of improvement. Mr. Cassano said that all FDNY officials can do is recruit as many minority candidates as possible. "I think we've done a much better job," he said. "And I think the results speak for themselves."

He also cited the record number of minorities that passed the 2007 exam, with 38 percent of those who applied passing, and 33 percent of minority applicants placing among the top 1,000 candidates on the list. When asked about the fact that the NYPD is more than 50 percent black and Hispanic, Mr. Cassano replied, "I run the Fire Department, not the Police Department."

Mr. Levy also brought up a 2002 Columbia University study on the Fire Department, saying it was composed primarily of white males with similar backgrounds and values, and that as long as women and minorities perceived the FDNY as a closed environment, it might be a hindrance to their recruitment. Mr. Cassano disagreed with the study's findings, though he acknowledged that the statement that white applicants are significantly more likely to be recruited by friends and family might be true.

### Wants No Part of Quotas

He also shied away from any kind of quota when asked by Mr. Levy if he thought it might be helpful to set a goal for recruitment, saying that his goal was to recruit the most-qualified candidates and generally increase diversity in the department. "I think we've established the fact that we've done very well," he said.

Mr. Cassano's testimony didn't necessarily assuage the judge's concerns about bias; he still seemed troubled about influence that's traded on during a largely ad-hoc and off-the-record review process. The thrust of Mr. Cassano's argument was that the system is fair because of the integrity of the board members, and that keeping a written record of proceedings would stifle the conversation.

The judge ended his questioning by showing Mr. Cassano a document from the FDNY website for its 2011 Medal Day, which honors Firefighters for their work. Judge Garaufis pointed out that of the 35 honorees, 18 had a family connection in the FDNY. When asked why he thinks so many family members of firefighters become firefighters themselves, Mr. Cassano said that he believes the value of the job is verbally passed down.

Judge Garaufis then asked how the medal recipients were determined, and Mr. Cassano explained that they were voted on by senior uniformed managers, none of whom are black. Mr. Cassano said those positions were all filled through promotional exams, not appointments, and that getting diversity in those ranks is hard with only 3 percent black firefighters on the force.

Additional testimony is expected this week.

A Dissenting View

Letters to the Editor: Vulcans' FDNY Non-Solutions

