```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
MICHAEL F. GALA, JR.,                                       :
                                                            :   MEMORANDUM DECISION
                            Plaintiff,                      :   AND ORDER
                                                            :
            - against -                                     :   20-cv-5549 (BMC)
                                                            :
THE CITY OF NEW YORK et ano.,                               :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, a Deputy Assistant Chief of the New York City Fire Department ("FDNY"), brings this First Amendment retaliation case under 42 U.S.C. § 1983. He claims that his planned promotion to Assistant Chief in May 2020 was rescinded by FDNY Commissioner Daniel Nigro because plaintiff refused to recant views expressed in a newspaper a decade earlier. The case is before me on defendants' motion to dismiss. For the reasons described below, the motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff has been an FDNY firefighter for over thirty years. He has been promoted within the FDNY on multiple occasions and has been Deputy Assistant Chief since 2016. On May 18, 2020, plaintiff met with Chief of Department John Sudnik and Chief of Fire Operations Thomas Richardson and was informed that he would be promoted to Assistant Chief of Department on May 23. However, Chief Sudnik explained that Commissioner Nigro wanted plaintiff to send him an email recanting opinions that he had expressed in Letters to the Editor

---

[1] Unless otherwise noted, the below facts are taken from plaintiff's complaint and assumed to be true for purposes of this motion. See Kolbasyuk v. Capital Mgmt. Servs., LP, 918 F.3d 236, 239 (2d Cir. 2019).

(the "Letters") published in the newspaper The Chief-Leader[2] ten years earlier.  Chief Sudnik said the retraction should say plaintiff is "not the same man" as he was when he wrote the Letters.

Plaintiff declined to send the retraction email.  When the list of FDNY promotions was announced a few days later, plaintiff's name was missing.  Chief Sudnik informed plaintiff that the Commissioner reversed the promotion decision because of plaintiff's refusal to recant the statements in the Letters.

The Letters concerned hiring standards in the FDNY, including the FDNY's entrance exam, an issue that was litigated against the City throughout the 2000s and 2010s.[3]  In the Letters, authored in 2007 and 2008, plaintiff criticized certain proposals for diversifying hiring at the FDNY, stating, *inter alia*, that "[c]andidates of any race and gender must seek out the job of FDNY firefighter the old-fashioned way", by "earn[ing] it"; "[t]he frenzy to diversify this department (and only this department) at any cost will lead to its future ruination"; he has "spoken out in this paper about the merit system and [has] been called both a bigot and a racist for expressing those opinions"; and expressing frustration with "black and female firefighters who have earned their positions in this department or who have risen through the ranks on their own merits" and then later "condemn the same system that facilitated that rise."  Plaintiff claims that his Letters were motivated by his concern about the relaxation of rigorous and objective testing requirements, were "written with the characteristic bluntness of a first responder," and "echoed the official positions of the City and the FDNY at the time."

---

[2] The Chief-Leader, also known as the Chief, is a widely-read newspaper among New York City employees covering civil service and local politics.

[3] The Letters are not annexed to the Complaint, but I may consider them here because they are referenced in the complaint and are plainly relevant, and there is no apparent dispute as to their authenticity or accuracy.  See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

2

In 2010, a court in this district found that the entrance exams administered by the FDNY had an unlawful discriminatory impact on minority applicants and issued injunctive relief. A court-appointed special master oversaw the overhaul of the FDNY's hiring process. Plaintiff assisted that process, which produced a revamped entrance exam designed to address disparate impact concerns. Plaintiff was commended by the special master for his efforts: she reported to the court that plaintiff's efforts in distributing a letter encouraging cooperation in a criterion study were "very important to the success of the study" and noted his overall assistance in scheduling and coordinating the test administration sessions. The Letters at issue in this case predate the court-ordered overhaul of the entrance exam.

## DISCUSSION

In deciding a motion to dismiss under Federal Rules of Civil Procedure rule 12(b)(6), the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**I.     The complaint states a claim for retaliation**

It is well-settled that public employment cannot be conditioned "on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). Speech by a government employee is protected if it is made "on a matter of public concern, and the employee's interest in expressing herself on this matter must

3

not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668 (1994) (quoting Connick, 461 U.S. at 142). Where a public employee alleges retaliation for exercising his First Amendment right to free speech, he must initially establish that: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, (2) he or she suffered an adverse employment action, and (3) the speech was at least a substantial or motivating factor in the adverse employment action." Johnson v Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (citations omitted) (cleaned up).

In their motion, defendants do not dispute that plaintiff has met his initial burden, and I don't see how they could. His Letters concerned proposed policies to change hiring standards for firefighters and his opinion that such efforts could threaten the health and safety of firefighters and civilians. "[D]iscussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." Id. (quoting Harman v. City of New York, 140 F.3d 111, 118 (2d Cir. 1998)).

That being said, I view this case as being more about retaliation for failure to engage in compelled speech than for past speech. Plaintiff was promoted multiple times after he authored the original Letters, and it was only after he refused to retract those Letters – that is, that he *refused* to speak – that he suffered an adverse employment action. Plaintiff has still met his initial burden under this framing because the compelled speech concerned government policies and his view of them, and because the First Amendment "protect[s] a citizen's decision both as to what to say and what not to say." Jackler v. Byrne, 658 F.3d 225, 243 (2d Cir. 2011). Defendants concede that plaintiff was considered for a promotion, asked to recant his previous

4

statement, and then not promoted after he refused to do so. Accordingly, plaintiff has satisfied his initial burden of demonstrating that the speech at issue regarded a matter of public concern and that he suffered an adverse employment action plausibly as a result of his refusal to issue a retraction.

Defendants argue that it was lawful for the Commissioner to require plaintiff to disavow his views while under consideration for a high-ranking position in the FDNY. They contend that those opinions were at odds with the Commissioner's and FDNY's policies to promote racial diversity and had the potential to cause disruption. A "government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." Johnson, 342 F.3d at 114 (citing Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir. 1995)). The second factor "forms the crux of what is commonly referred to as the Pickering balancing test." Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)). Where the speech at issue "substantially involve[s] matters of public concern, the government must make a strong showing of [potential] interference with operations." Id. at 115 (quoting Bieluch v. Sullivan, 999 F.2d 666, 671 (2d Cir. 1993)). As a general rule, the Pickering test "is a matter of law for the district court to apply" but "where there are questions of fact relevant to that application," there may be some cases "in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the [district] court's application

5

of the Pickering balancing test.'" Id. at 114 (quoting Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 557 (2d Cir. 2001)).

There are at least two problems with defendants' position. First, it is not clear that the Pickering balancing test even applies to this case. In Connick, the Supreme Court held that an assistant district attorney could be fired for complaints she made about her supervisors. 461 U.S. at 154. Reflecting on that decision thirty-five years later, the Court asked:

> Now, suppose that the assistant had not made any critical comments about the supervisors but that the district attorney, out of the blue, demanded that she circulate a memo praising the supervisors. . . . [W]ould the order be justified on the ground that the effective operation of the office demanded that the assistant voice complimentary sentiments with which she disagreed?

Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31, 138 S. Ct. 2448, 2473 (2018). The Court concluded, "If Pickering applies at all to compelled speech – a question that we do not decide – it would certainly require adjustment in that context."

The situation here is a blend of those presented in Connick and in the Court's hypothetical and, in some ways, is more concerning than either. It is bad enough when a public employer chills legitimate discourse on matters of public concern by punishing those who express their views. It is even more egregious when a public employer requires an affirmative retraction of such speech from a decade earlier as a condition precedent to promotion. Cf. Rutan v. Republican Party of Ill., 497 U.S. 62, 76 (1990) (Supreme Court "held that Maryland could not refuse an appointee a commission for the position of notary public on the ground that he refused to declare his belief in God, because the required oath 'unconstitutionally invades the appellant's freedom of belief and religion'" in one case and "struck down a loyalty oath which was a prerequisite for public employment" in another). Plaintiff alleges that the Commissioner required him to disavow his past, sincerely held opinions on a complex issue; opinions that were not necessarily at odds with the FDNY's and City's opinions at the time. "The First Amendment

6

'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Connick, 461 U.S. at 145. The FDNY's redesign of its entrance exam is one such change. Years-later punishment imposed on a government employee for having added his own beliefs to the conversation risks chilling future expression.

Moreover, Pickering does not quite fit the allegations in this case. Plaintiff was promoted multiple times in the ten-plus years since the Letters were published. If plaintiff's past speech and present leadership position have not caused an intolerable disruption to the FDNY's operations so far, there is no reason to presume that his refusal to retract that speech all these years later would cause one now. And to the extent that the Commissioner's goal for the retraction was to improve public relations, the balancing test evaluates internal disruptions; it does not generally permit the public to curtail unpopular ideas with the government's help. See, e.g., Feiner v. New York, 340 U.S. 315, 320 (1951) ("We are well aware that the ordinary murmurings and objections of a hostile audience cannot be allowed to silence a speaker . . . ."); Flanagan v. Munger, 890 F.2d 1557, 1566 (10th Cir. 1989) ("The department cannot justify disciplinary action against plaintiffs simply because some members of the public find plaintiffs' speech offensive and for that reason may not cooperate with law enforcement officers in the future."). In any event, it may be difficult for defendants to establish that the Commissioner reasonably believed the retraction would eliminate any potential disruption; an email paying lip service to diverse hiring efforts may be a shallow and ineffective means of improving public relations on a complex issue with which the FDNY (and many other institutions) have grappled for years.

The second, more pertinent issue for the present motion is one of timing; courts in this Circuit routinely hold that it is inappropriate to resolve the Pickering analysis on a motion to

7

dismiss, as defendants seek here. See, e.g., Squicciarini v. Vill. of Amityville, No. 17-cv-6768, 2019 WL 1232093, at *9 (E.D.N.Y. Mar. 15, 2019) (Pickering test is a fact-sensitive inquiry for which defendants bear the burden and is thus not appropriately resolved on a motion to dismiss); Sugar v. Greenburgh Eleven Union Free Sch. Dist., No. 18-cv-67, 2018 WL 6830865, at *7-8 (S.D.N.Y. Dec. 28, 2018); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 129 (E.D.N.Y. 2011); Kelly v. Huntington Union Free Sch. Dist., 675 F. Supp. 2d 283, 298 (E.D.N.Y. 2009). Defendants bear the "burden of showing that despite First Amendment rights the employee's speech so threatens the government's effective operation that discipline of the employee is justified," Melzer v. Bd. of Educ., 336 F.3d 185, 193 (2d Cir. 2003), and the Court cannot make that determination on the present record at this procedural stage. Defendants would have the Court assume that the Commissioner reasonably predicted plaintiff's speech would be disruptive, that he believed the requested corrective speech would somehow eliminate that potential disruption, and that the Commissioner's decision not to promote plaintiff was based on that potential, all without any evidence to support those assumptions. Accordingly, the potential disruption does not provide a basis to dismiss plaintiff's claim at this time.

**II.      The Commissioner is entitled to qualified immunity**

Defendants also argue that Commissioner Nigro should be dismissed from the case on qualified immunity grounds. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether a particular right was clearly established at the time defendants acted, the Court considers three factors: (1) whether the right in question was defined with reasonable

8

specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. Id. "[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." Id. at 169-70.

Importantly, the qualified immunity analysis does not go hand in hand with the disruption analysis. Instead, "[a] defendant pleading qualified immunity on a motion to dismiss is entitled to prevail if the allegations in the complaint fail to 'state a claim of violation of clearly established law.'" McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997). The analysis is addressed to whether the defendant reasonably could have thought that the adverse action did not violate the First Amendment and does not require an analysis of the merits. See Montero v. City of Yonkers, New York, 890 F.3d 386, 402 (2d Cir. 2018) (dismissal under 12(b)(6) on qualified immunity grounds warranted "[b]ecause the specific question of whether the plaintiff's alleged union remarks were protected by the First Amendment was not beyond debate at the time of [defendants'] alleged retaliation"). The Second Circuit has cautioned that the issue in these cases is not whether defendants should have known that there was a federal right to free speech and that their actions violated it. See Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999). Rather, the "clearly established" analysis is narrowly tailored to the alleged conduct. Naumovski v. Norris, 934 F.3d 200, 211 (2d Cir. 2019) (clearly established law must be particularized to the facts of the case and must not be defined at a high level of generality).

Here, defendants argue that it was objectively reasonable for the Commissioner to believe it was acceptable to decline to promote plaintiff. They claim that plaintiff's refusal to recant his prior statements amounted to a refusal to promote agency policy, and a "highranking policy-making employee does not have, and never has had, a First Amendment right to refuse his employer's directive to promote agency policy." Lewis, 165 F.3d at 166. Plaintiff does not dispute that he is a policymaking employee, and the complaint's allegations support that conclusion. See McEvoy, 124 F.3d at 104. Even if the present record does not conclusively establish that the position is policymaking, it is sufficient for me to conclude that it is objectively reasonable for defendants to believe that to be the case based on the responsibilities of the position. See id. at 105.

The question underlying the qualified immunity analysis is whether the Commissioner should have known that it would violate the First Amendment to fail to promote a policymaking public employee because of the employee's refusal to recant past statements that the employer believes depart from the department's present policies and agenda. The answer is clearly no. First, I can identify no cases clearly establishing that it violates the First Amendment to cause an employee to suffer an adverse action for refusing to recant past statements that the employer viewed as disruptive or at odds with present policies. Second, it is well-established that high-ranking policymaking employees do not have a right to refuse to promote agency policy. See Lewis, 165 F.3d at 166. It was thus reasonable to conclude that plaintiff's refusal to issue the requested statement was a lawful reason not to promote him. Third, if plaintiff is a policymaker, the Pickering analysis will weigh heavily in defendants' favor. See Camacho v. Brandon, 317 F.3d 153, 161 (2d Cir. 2003). It will be a close question as to whether defendants' actions

10

violated the First Amendment, and thus I cannot say that it was beyond debate at the time of the alleged retaliation. Accordingly, the Commissioner is entitled to qualified immunity.

## CONCLUSION

Defendants' motion to dismiss is granted to the extent that the claims against Commissioner Nigro are dismissed on qualified immunity grounds, and otherwise denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       March 11, 2021